**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| Clinton Folkes, # 216506, | ) | Case No. 2:19-cv-760-RMG-MGB |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Warden Nelsen, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Clinton Folkes, a *pro se* state prisoner, seeks habeas corpus under 28 U.S.C. § 2254. (Dkt. No. 1.)  The Warden seeks summary judgment.  (Dkt. No. 15.)  Under 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), the undersigned is authorized to review the motion and submit a recommendation to the District Judge.  For the following reasons, the undersigned recommends granting the Warden's motion and dismissing this case with prejudice.

## BACKGROUND

Folkes is serving life in prison without the possibility of parole for assault and battery with intent to kill ("ABWIK").  (Dkt. No. 14-1 at 433, 436.)  His imprisonment is the product of a July 2007 fight he started at Finlay Park in Columbia, South Carolina.  In the fight, he slashed the victim's arm and neck with a knife.  (*Id.* at 118.)

Folkes was part of a group of homeless people who spent time at the park.  (Dkt. No. 14-1 at 155–56, 238.)  Other members of that group included Karem Jones, Tiffany Briggs, James Reddick, Jerome Patrick, and Retalia Green.  (*Id.* at 83, 131, 159, 180, 233.)  They all knew Folkes; Briggs dated him until a couple of days before the fight.  (*Id.* at 89–90, 132–33, 159, 180, 234.).  All five saw the fight; one participated in it.

Jones was that participant. According to Jones, he was speaking with Briggs when suddenly Folkes approached them. (Dkt. No. 14-1 at 92–93.) Noticeably drunk, Folkes was hostile, demanding to know why Jones and Briggs were talking and threatening to "f--- [Jones] up." (*Id.* at 93–96.) Jones told Folkes to get away from him. (*Id.* at 95.) Folkes threw a beer bottle at Jones but missed. (*Id.* at 97.) He then punched Jones in the eye. (*Id.*) Jones responded by hitting Folkes twice. (*Id.* at 97–98.) As Folkes fell from the blows, he grabbed Jones' shirt and pulled Jones down on top of him. (*Id.* at 98.) They tussled on the ground for a moment, and then someone told Jones he was bleeding from his neck. (*Id.*) Jones got up and saw that Folkes had a knife. (*Id.* at 100, 107–08.) Folkes said, "I'm going to f---ing kill you." (*Id.* at 100.) Jones ran to a phone booth and called 911. (*Id.* at 100–01.)

The other four witnesses' accounts corroborate Jones'. Each one saw Folkes approach Jones and start the fight by throwing the first punch; Reddick and Patrick also saw Folkes throw the beer at Jones. (Dkt. No. 14-1 at 138, 139, 141, 172, 199, 210, 212, 240.) All four saw the two men struggling on the ground, followed by Folkes reaching up and cutting Jones' neck with a knife. (*Id.* at 138, 173, 200–01, 241–42.) Still watching as Jones ran to the phone booth, Reddick, Patrick, and Green heard Folkes say he should have killed Jones. (*Id.* at 169, 213, 244.)

Police arrived shortly after the incident. They quickly found Folkes nearby and arrested him. (Dkt. No. 14-1 at 285–87.) Jones was taken to an emergency room. (*Id.* at 110.)

**Trial and Direct Appeal**

The State charged Folkes with ABWIK. (Dkt. No. 14-2 at 534.) It then served Folkes with a notice that, because he had two prior ABWIK convictions, he would serve life without parole if convicted this third time. (*See* Dkt. No. 14-1 at 440–41.) Although the prosecutor initially refused to discuss a potential plea deal, she later made Folkes three offers. (Dkt. No. 14-2 at 656–57.) Folkes declined them all. (*Id.* at 658–59.)

The case went to trial in July 2008. (Dkt. No. 14-1 at 1.) Jones, Briggs, Reddick, Patrick, and Green all appeared for the State, testifying to their accounts of the altercation and identifying Folkes in court as the person who attacked Jones. (*Id.* at 115, 146, 170, 231, 250.) The State also called several police officers involved in the case, as well as a medical expert. (*Id.* at 265–324, 338–72.) Folkes did not present a defense case. (*See id.* at 378.)

After closing arguments, the trial court charged the jury. (Dkt. No. 14-1 at 406–21.) Among other things, it told the jury they had three verdict options: find Folkes guilty of ABWIK, find him guilty of the lesser-included offense of assault and battery of a high and aggravated nature (ABHAN), or find him not guilty at all. (*Id.* at 419.) The court also explained the elements of those two crimes and then told the jury ABHAN "includes all the elements of [ABWIK] except express malice. In addition, the State must prove beyond a reasonable doubt an aggravating circumstance." (*Id.* at 413–18 (quoted language at 417).) After the charge, Folkes' lead trial counsel asked the court to instruct the jury that the absence of malice is not an element of ABHAN and thus the jury could find Folkes acted with malice and still find him guilty of ABHAN, rather than ABWIK. (*Id.* at 422–23.) The trial court declined. (*Id.* at 423.)

During their deliberations, the jury asked the court "What is the difference between [ABWIK] and [ABHAN]?" (Dkt. No. 14-1 at 424.) The court repeated its instructions on those two crimes, again concluding with the charge that ABHAN "includes all of elements of [ABWIK] except malice aforethought. In addition, the State must prove beyond a reasonable doubt the aggravating circumstances." (*Id.* at 425–30 (quoted language at 430).)

The jury found Folkes guilty of ABWIK. (Dkt. No. 14-1 at 433.) Because Folkes had two prior ABWIK convictions, the trial court sentenced him to life without parole. (*Id.* at 468.)

Folkes appealed, arguing the trial court improperly refused to charge the jury that absence of malice is not an element of ABHAN. (Dkt. No. 14-1 at 449–67.) The state Court of Appeals affirmed in an unpublished decision. (*Id.* at 484–85.) Folkes did not seek further review.

### Post-Conviction Relief ("PCR") Proceedings

In October 2010, Folkes filed an application for post-conviction relief in state court, asserting over twenty claims of ineffective assistance of trial and appellate counsel. (Dkt. No. 14-1 at 487–92; Dkt. No. 14-2 at 501–04, 526–29.)

The PCR court held a two-day hearing in July and September 2014. (Dkt. No. 14-2 at 541.) Folkes testified and called five witnesses: his appellate lawyer and her supervisor; his two trial lawyers; and a police officer involved in his post-arrest booking at the jail. (*Id.* at 542.)

In January 2016, the PCR court issued a lengthy order denying Folkes' claims. (Dkt. No. 14-1 at 808–53.) Folkes petitioned for certiorari, challenging the PCR court's denial of fourteen of his claims. (Dkt. No. 14-2 at 854; Dkt. No. 14-4.)[1] The state Supreme Court transferred the case to the Court of Appeals, which summarily denied the petition in October 2018. (Dkt. No. 14-5 at 5; Dkt. No. 14-6.)

## PROCEDURAL HISTORY

Folkes filed his habeas petition on March 11, 2019. (Dkt. No. 1-3.) In the petition itself, he summarily claims ineffective assistance of counsel and "judicial error." (Dkt. No. 1 at 5.)

---

[1]    As the rules governing § 2254 cases require, the Warden has provided the Court records from the state-court proceedings. *See* Rule 5(c)–(d), Rules Governing § 2254 Cases. However, the records for the PCR appeal are incomplete. Although the Warden submitted Folkes' original certiorari petition (*see* Dkt. No. 14-4), the South Carolina Appellate Case Management System's web site shows that later, Folkes filed an amended petition, the State filed a return, and then Folkes filed a reply. https://ctrack.sccourts.gov/public/caseView.do?csIID=61547, *last visited* Nov. 8, 2019). The Warden did not provide any of those documents. Although this Court can take judicial notice of those records, *see Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980), it was the Warden's responsibility to provide this Court all PCR appellate briefs. Rule 5(d), Rules Governing § 2254 Cases. Upon review, however, Folkes' later filings did not change the issues he raised, or the arguments he made, in his original brief. *See also* Mot. for Leave to File Am. Pet. for Writ of Cert., *Folkes v. State*, No. 2016-000415 (S.C. Ct. App. Mar. 14, 2017). Thus, the Warden's omission does not prevent this Court from conducting meaningful habeas review.

However, to explain those grounds, Folkes directs the reader to several attachments, including portions of his PCR certiorari petition and portions of a brief he filed with the PCR court addressing the claims he asserted in that court. (*See id.*) Thus, it appears Folkes is raising here all twenty-two of his PCR claims. Folkes asks this Court to vacate his conviction and sentence and grant him a new trial. (*Id.* at 15.)

The Warden has moved for summary judgment. (Dkt. No. 15.) Folkes has filed a response (Dkt. No. 18), making this matter ripe for adjudication.

## LEGAL STANDARD

Habeas corpus in federal court exists to "guard against extreme malfunctions in the state criminal justice systems." *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citation and internal quotation marks omitted). Federal habeas is neither an alternative to state-court relief nor an additional chance to appeal erroneous state-court rulings. *See id.* That preference for, and deference to, state courts is borne out in the various constraints placed on federal courts. *See Shoop v. Hill*, 139 S. Ct. 504, 506 (2019) (per curiam) (stating § 2254 "imposes important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases"); *see also Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (stating § 2254 "reflect[s] a presumption that state courts know and follow the law" (citation and internal quotation marks omitted)).

For instance, state prisoners who challenge matters "adjudicated on the merits in State court" cannot get relief in federal court unless they show that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law" announced by the Supreme Court or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d). That means a state court's ruling must be "so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. Federal courts must also defer to state courts' factual determinations, which are presumed correct until the prisoner rebuts that presumption with clear and convincing evidence. § 2254(e)(1).

Before state prisoners may try to clear those high hurdles, two rules steer them to first pursue all relief available in state court. *See* § 2254(b)(1). The first, known as exhaustion of remedies, requires a prisoner to present his claims to the highest state court with jurisdiction to decide them. *Stewart v. Warden of Lieber Corr. Inst.*, 701 F. Supp. 2d 785, 790 (D.S.C. 2010). A federal court cannot grant a prisoner's habeas petition until he exhausts his state-court remedies. § 2254(b)(1), (c). The second rule, called procedural default, comes into play when a prisoner failed to present a claim to the state courts at the appropriate time and has no means of doing so now. *Stewart*, 701 F. Supp. 2d at 790. Federal courts may not consider a procedurally defaulted claim unless the prisoner shows either that he has cause for defaulting and that the alleged violation of federal law prejudiced him or that not addressing the claim would be a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

The ultimate issue in this case is, of course, whether Folkes should receive habeas relief under these standards. However, the Warden's summary judgment motion presents narrower questions. Summary judgment is appropriate only if the moving party shows that "there is no genuine dispute as to any material fact" and that he is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also* Rule 12, Rules Governing § 2254 Cases (stating courts may apply in habeas cases any of the Federal Rules of Civil Procedure to the extent they are not inconsistent with statutes or the § 2254 rules). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse

party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Viewing the habeas rules through the lens of Rule 56, the Court has three questions to answer at this juncture:

(1)    Are there genuine issues of fact as to whether Folkes' claims are properly before the Court?
(2)    Are there genuine issues of fact as to the merits of Folkes' claims?
(3)    If the answer to either (or both) of the first two questions is "no," is the Warden entitled to judgment as a matter of law?

In answering those questions, the undersigned has carefully considered the record before the Court and has liberally construed the materials Folkes has submitted. *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## DISCUSSION

As mentioned, Folkes is asserting twenty-two claims. In each, he alleges ineffective assistance of counsel, either at trial or in the direct appeal.

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). A petitioner proves ineffective assistance by showing his attorney's performance was deficient and prejudiced him. *Id.* at 687. An attorney's performance is deficient if it was unreasonable under the circumstances of the case and under then-prevailing professional norms. *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). Prejudice is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" means "a probability sufficient to undermine confidence in the outcome." *Kimmelman*, 477 U.S. at 384.

*Strickland* is highly deferential to counsel, and § 2254(d) is highly deferential to state courts. *Harrington*, 562 U.S. at 105. That means when a state court has adjudicated an ineffective-assistance claim on the merits, this Court's review is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). In other words, the question becomes "not whether counsel's actions were reasonable," but "whether there is any reasonable argument that [Folkes'] counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.[2] Thus, although Folkes has framed his claims purely as ones of ineffective assistance, the undersigned has liberally construed them as alleging the PCR court's rulings do not withstand § 2254(d) scrutiny.

The Warden argues none of Folkes' grounds merits the granting of habeas. (Dkt. No. 14 at 1.) The Warden also asserts that eight of the grounds—Six, Seven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen, and Twenty-Two—are procedurally defaulted. (*Id.* at 13, 14, 19, 20–21, 23, 29.) For the reasons below, the undersigned agrees with the Warden.

## I.    Grounds One and Two

Folkes' first two grounds involve the elements of ABHAN and ABWIK, as well as the difference between those crimes. South Carolina defines ABWIK as an unlawful act of a violent nature to another person with malice aforethought, either express or implied, and intent to kill. *E.g.*, *State v. Coleman*, 536 S.E.2d 387, 389 (S.C. Ct. App. 2000) (citations omitted). ABHAN is an unlawful act of violent injury accompanied by circumstances of aggravation. *Id.* (citation omitted). "[T]he absence of malice is not a required element of the offense of ABHAN, and the

---

[2]    Subsection 2254(d)'s standards are to be applied to the decision from the highest state court to decide the claim at issue on the merits. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). Where, as here, the highest state court rules summarily, the federal habeas court should "look through" that unexplained decision to the last state-court decision that provides a relevant rationale, and "should then presume that the unexplained decision adopted the same reasoning." *Id.* In this case, the PCR court was the only one to issue a reasoned decision on Folkes' claims. As neither party contends the Court of Appeals denied certiorari on different reasoning than what the PCR court provided, the undersigned has used the PCR court's reasoning to analyze the merits of Folkes' claims.

fact that a defendant acts with malice does not preclude a finding of ABHAN." *State v. Tyler*, 560 S.E.2d 888, 890 (S.C. 2002).

In her closing argument, the prosecutor argued Folkes was guilty of ABWIK, not ABHAN. (Dkt. No. 14-2 at 387–89.) At one point, she told the jury, "What is in dispute today is whether there was malice aforethought, express or implied. And that's going to be the difference between" ABHAN and ABWIK. (*Id.* at 389.) She also said the jury had to find Folkes guilty of ABWIK, not ABHAN, if they determined he acted with malice. (*Id.* at 388.)

In PCR, Folkes asserted trial counsel was ineffective for not objecting to those statements. (Dkt. No. 14-2 at 526.) The PCR court disagreed. (*Id.* at 827–30.) Analyzing the law of ABWIK and ABHAN, it concluded that "the crucial difference between ABWIK and ABHAN when ABHAN is charged as a lesser[-]included offense is whether the defendant acted with malice." (*Id.* at 829.) Consequently, the court found the prosecutor stated South Carolina law accurately. (*Id.* at 829, 830.) Because an objection to the prosecutor's statements would have been overruled, lead trial counsel's decision not to object was reasonable and did not prejudice Folkes. (*Id.* at 827, 829, 830.) The court therefore denied the claim.

Folkes challenges the PCR court's rulings. To prevail, however, he would need to disprove their central premise: that the prosecutor stated the law correctly. This Court's limited scope of review prevents this Court from deciding that issue for itself; the PCR court's analysis of South Carolina law is binding on this Court. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Thomas v. Davis*, 192 F.3d 445, 449 n.1 (4th Cir. 1999). Consequently, Folkes' claims must be analyzed against the backdrop of the PCR court's unreviewable conclusion about state law. Given that, the undersigned cannot conclude the PCR court's decision was anything but reasonable. *Cf. Rice v. Pate*, No. 4:14-cv-185-TLW-TER, 2014 WL 8335449, at *9 (D.S.C. Oct. 6, 2014) (finding PCR court reasonably found counsel was not ineffective for failing to raise an

argument that had no merit under state law), *report and recommendation adopted*, 2015 WL 1400070 (D.S.C. Mar. 26, 2015).

## II.    Ground Three

After the state Court of Appeals affirmed on direct appeal, Folkes' appellate counsel did not file a rehearing petition.  Folkes faulted her in PCR, claiming her failure to seek rehearing prevented him from petitioning the state Supreme Court for certiorari.  (Dkt. No. 14-2 at 3.)

Appellate counsel testified at the PCR hearing.  (*See* Dkt. No. 14-2 at 576–96.)  When she represented Folkes, she practiced at the state appellate defense office, which handles criminal appeals for the indigent.  (*See id.* at 577–78.)   She resigned while Folkes' appeal was pending; the Court of Appeals issued its opinion ten days after she left.  (*Id.* at 547, 577–78.)  Appellate counsel testified that, had she stayed at appellate defense, she "certainly" would have petitioned for rehearing and certiorari.  (*Id.* at 578.)  "I thought it was a winner.  I thought it was clear error. I thought it was reversible."  (*Id.* at 578–79.)

The office's chief appellate defender testified as well.  (*See* Dkt. No. 14-2 at 546–76.)  He testified that, when Folkes' appellate counsel quit, Folkes' case became his responsibility.  (*Id.* at 554–55.)  He could not recall if, when the Court of Appeals issued its opinion, he read the opinion, reviewed Folkes' file, or assessed whether he should seek rehearing and certiorari.  (*Id.* at 555–56.)  However, he disagreed with the Court of Appeals' ruling, and he "wish[ed]" that rehearing and certiorari had been pursued.  (*Id.* at 572.)

The PCR court denied the claim.  (Dkt. No. 14-2 at 830–33.)  It based its conclusion on the state Supreme Court's ruling in *Douglas v. State* that, in criminal cases, appellate counsel has no duty to pursue rehearing or certiorari after the Court of Appeals issues an adverse decision. 631 S.E.2d 542, 543 (S.C. 2006).  (Dkt. No. 14-2 at 831, 833.)  The PCR court reasoned that

because the appellate lawyers had no duty to seek rehearing, their failure to do so was not deficient and did not prejudice Folkes. (*Id.* at 833.)

The appellate attorneys' testimony makes the undersigned hesitant to accept the PCR court's no-prejudice finding. Admittedly, the mere filing of petitions for rehearing and certiorari would not have guaranteed further appellate review, let alone reversal. On the other hand, two seasoned appellate attorneys testified that the Court of Appeals' opinion was wrong and that Folkes' case was a good candidate for certiorari. While their assessments of the appeal are not binding, they also are not easily dismissed.

Nevertheless, the PCR court's denial of the claim was reasonable. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011) (stating § 2254(d)(1) directs federal habeas courts to "focus[] on the result, not on the reasoning that led to the result"). The Constitution does not guarantee assistance of counsel in the pursuit of discretionary appellate review. *See Wainwright v. Torna*, 455 U.S. 586, 587–88 (1982) (per curiam) (no Sixth Amendment right to counsel in pursuing discretionary appeal); *Ross v. Moffitt*, 417 U.S. 600, 610 (1974) (no Fourteenth Amendment right to counsel when pursuing discretionary appeal). Rehearing at the state Court of Appeals is discretionary. *Williamson v. Middleton*, 681 S.E.2d 867, 869 (S.C. 2009) (per curiam). Consequently, "there is no constitutional right to counsel in seeking a rehearing" at the state Court of Appeals. *Allison v. Bodison*, No. 8:08-cv-2415-HMH, 2009 WL 2524691, at *26 (D.S.C. Aug. 14, 2009); *see also Cabbagestalk v. McFadden*, No. 5:14-cv-3771-RMG, 2015 WL 4077211, at *36 (D.S.C. July 1, 2015) (finding PCR court reasonably denied ineffective-assistance claim of failure to seek rehearing; petitioner had no right to counsel for that discretionary review). Thus, appellate counsels' failure to seek rehearing could not serve as the basis for relief, in the PCR court or here. The undersigned recommends denying this claim.

### III.     Ground Four

Folkes did not present a defense at trial.  (*See* Dkt. No. 14-1 at 372–73.)  In PCR, he alleged trial counsel failed to inform him that, even if he declined to testify in his own defense, he still had a right to present other evidence.  (Dkt. No. 14-2 at 526.)  At the hearing, Folkes claimed he would have testified in his own defense if trial counsel had explained the risks and benefits of testifying.  (*Id.* at 730–31.)

The PCR court did not find Folkes' allegations credible, instead believing trial counsel's PCR hearing testimony.  (Dkt. No. 14-2 at 833–34.)  Lead trial counsel testified he explained to Folkes not only his right to testify but also the potential benefits and drawbacks of Folkes taking the stand.  (*Id.* at 611–12, 660, 661–62, 833.)  Counsel told Folkes that testifying would help his case and that he would try to prevent the State from impeaching Folkes with some of his prior criminal convictions.  (*Id.* at 611.)  But according to counsel, Folkes made up his mind well before trial that he did not want to testify.  (*Id.* at 660, 833.)  In light of that, trial counsel made the tactical decision to not put up any defense witnesses; the marginal benefit Folkes might get from potential defense witnesses' testimony would come at the cost of losing the right to give the final closing argument—a right South Carolina law gave to defendants who presented no case.  (*Id.* at 612, 661–62, 833–34.)  Nevertheless, counsel did tell Folkes that he had the right to put up a defense case even if he did not personally testify.  (*Id.* at 612, 833.)  Based on all that testimony, the PCR court found trial counsel did not perform deficiently.  (*Id.* at 833–34.)

The PCR court also found Folkes failed to show any prejudice from counsel's purported failure.  (Dkt. No. 14-2 at 834.)  At the PCR hearing, Folkes testified he wanted the jury to hear evidence that he had a job and a place to live on the day of the fight.  (*Id.* at 796.)  The PCR court found those issues were "collateral . . . at best."  (*Id.* at 834.)

The undersigned sees nothing unreasonable in the PCR court's decision. Lead trial counsel's testimony directly contradicted the main premises of Folkes' claim—that is, counsel testified he did the things Folkes accused him of not doing. The PCR court's finding that counsel's testimony was credible is presumed correct. *See Merzbacher v. Shearin*, 706 F.3d 356, 367 (4th Cir. 2013). As Folkes has given this Court nothing to rebut that presumption, counsel's testimony amply supports the PCR court's ruling. The undersigned therefore recommends denying this ground.

### IV.    Ground Five

At trial, the State called Patrick, who was Folkes' friend. (Dkt. No. 14-1 at 180.) In his direct examination, he testified about roofing work he used to perform with Folkes. (*Id.* at 187–89, 190–91.) Patrick told the jury he and Folkes used special knives on the job, but Folkes sometimes carried his knife with him after work; before Folkes got that knife, he kept a straight razor with him. (*Id.* at 189–90.) Trial counsel did not object to that testimony. (*See id.*)

In PCR, Folkes argued counsel was ineffective for not objecting to testimony that "bore no logical relevance to the . . . case and constituted evidence of prior bad acts." (Dkt. No. 14-2 at 526.) Lead trial counsel testified he did not object because Patrick was so soft-spoken that the jury likely did not hear his testimony; indeed, just after Patrick made the statement, the trial court directed him to speak up. (*Id.* at 614; Dkt. No. 14-1 at 190.) Counsel thought objecting would only draw unwanted attention to testimony the jury probably did not hear. (Dkt. No. 14-2 at 614.)

The PCR court denied the claim. (Dkt. No. 14-2 at 835.) It found no reasonable possibility that the testimony had any impact on the case. (*Id.*) "Numerous witnesses testified that they saw [Folkes] with a knife at the park on the day of the incident." (*Id.*) Given the "overwhelming and uncontroverted testimony that he was indeed armed with a knife on the day

in question," the PCR court could not find Patrick's testimony prejudicial under *Strickland*. (*Id.*) The court declined to address whether trial counsel performed deficiently. (*See id.* at 835–36.)

The undersigned sees no reason to disturb the PCR court's ruling. To be sure, Patrick's testimony might have been objectionable propensity evidence. However, the danger of propensity evidence is its power to make the jury reach the wrong conclusion about whether the defendant did the thing he is accused of doing. *See Michelson v. United States*, 335 U.S. 469, 475–76 (1948). Here, the testimony about Folkes' propensity to carry knives related to the issue of whether Folkes used a knife in the fight. As the PCR court pointed out, the jury had ample independent evidence that Folkes did just that. That independent evidence eliminated the potential for the jury to be influenced by a potentially impermissible propensity inference. Consequently, there was no reasonable probability that Patrick's testimony prejudiced the case. The PCR court therefore reasonably denied this claim. The undersigned recommends this Court do so as well.

### V.    Grounds Six and Seven

In an email sent while Folkes was awaiting trial, the prosecutor told Folkes' lawyers that "this case is a mandatory LWOP, so I can't make a[ plea] offer." (Dkt. No. 14-2 at 366.) In PCR, Folkes asserted trial counsel was ineffective for neither challenging the prosecutor's position nor investigating whether what she wrote was true. (Dkt. No. 14-2 at 526–27.)

At the PCR hearing, lead trial counsel testified that, despite the prosecutor's email, he nevertheless negotiated with her. (Dkt. No. 14-2 at 618, 650–52.) She made plea offers on three occasions: ten years, twenty years, and fifteen years. (*Id.* at 650–52, 656–57, 764–65.) Counsel presented all three offers to Folkes, who rejected them. (*Id.* at 658–59.) Counsel's case notes, which corroborated his testimony, were entered as PCR exhibits. (*Id.* at 764–65.)

Relying on lead trial counsel's testimony and notes, the PCR court found that trial counsel were not deficient. (Dkt. No 14-2 at 836–37.) It did not address the prejudice prong of *Strickland*. (*See id.*)

## A.    Procedural Default

Folkes did not raise these grounds in his PCR appeal. Issues not presented at the appropriate time to a state's highest court are procedurally defaulted. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). Thus, these grounds are defaulted.

As discussed below, several other of Folkes' grounds are procedurally defaulted for the same reason—he did not raise them in the PCR appeal. Others are defaulted because the PCR court never ruled upon them in its order, and Folkes never made a motion asking the court to address them. Folkes has not asserted that he has cause and prejudice excusing any of the defaults or that declining to address any of them would be a miscarriage of justice. The undersigned therefore recommends not addressing the merits of Ground Six, Ground Seven, or any other procedurally defaulted ground. However, in case the Court determines that any defaulted ground should be addressed, the undersigned has analyzed the merits of every defaulted claim.

## B.    Merits

The PCR court's decision was appropriate. Contrary to Folkes' assertions, trial counsel challenged the prosecution's no-offer position by obtaining several plea offers, each with far less time than life without parole. Although Folkes rejected every offer, counsel's conduct was nonetheless effective. The PCR court therefore properly denied these two claims.

## VI.    Ground Eight

Before the State presented its last witness, the trial court held a charge conference. (Dkt. No. 14-1 at 325–37.) Because malice is an element of ABWIK, the court said it would define

malice to the jury and explain how malice could be inferred.  (*Id.* at 326–27.)  At Folkes' counsel's request, the court then agreed to charge ABHAN as a lesser-included offense.  (*Id.* at 335–37.)  Counsel also asked the court to instruct the jury that, under *Tyler*, absence of malice is not an element of ABHAN.  (*Id.* at 329–33.)  After some discussion with counsel and the prosecutor, the court said it would read *Tyler* and then make a decision.  (*Id.* at 333.)

Also during trial, Folkes' attorneys filed a written request to charge.  (Dkt. No. 14-2 at 756–57.)  The written request included the proposed instruction that absence of malice is not one of ABHAN's elements.  (Dkt. No. 14-1 at 422–23.)  In the request, counsel also asked the court to tell them, before closing arguments, which of the proposed instructions it was using and which ones it was rejecting.  (Dkt. No. 14-2 at 756–57.)  However, the court never indicated whether it would give the absence-of-malice charge counsel requested.

During his closing argument, Folkes' lead trial counsel told the jury the court was "going to instruct [them] that the absence of malice is not an element of" ABHAN.  (Dkt. No. 14-1 at 404.)  The court, however, never gave such an instruction.  After closing arguments, the court said that, during a break in the charge conference, it read *Tyler* and then decided not to give the requested instruction.  (*Id.* at 423.)

In PCR, Folkes asserted lead trial counsel was ineffective for telling the jury the court would instruct them about absence of malice without first determining that the trial court would actually give the instruction.  (Dkt. No. 14-2 at 527.)  At the hearing, PCR counsel noted his written request for the court to tell him in advance if it was refusing to give any of his requested instructions.  (*Id.* at 622.)  Counsel testified the combination of his request and the court's silence led him to assume the court would tell the jury absence of malice is not an ABHAN element. (*Id.*)

The PCR court denied the claim for lack of prejudice. (Dkt. No. 14-2 at 837–38.) It found that both trial counsel and the prosecutor told the jury "that the judge would instruct them on the correct law and that any argument from either counsel was not evidence to be considered. Additionally, the trial court instructed the jury to only apply the law as instructed during its charge." (*Id.* at 838.) Based on that, the court could not find counsel's incorrect prediction about the jury charge might have affected the case. (*Id.*) It therefore denied the claim without addressing whether counsel's prediction was deficient. (*See id.*)

The rejection of the claim was reasonable. Folkes' theory of prejudice for this claim was that counsel's mistaken prediction "exacerbated the prejudice arising from his failure to object to the state's improper closing arguments." (Dkt. No. 14-4 at 35.) In other words, Folkes premised his claim on Grounds One and Two having merit. As explained above, however, the PCR court rejected the central premise of those claims, finding the solicitor said nothing wrong. If those statements were not erroneous, there was no harm for trial counsel's mistaken prediction to exacerbate. Moreover, as the PCR court noted, the trial judge told the jury he was their "sole and only instructor of the law." (Dkt. No. 14-1 at 413.) The jury was required to "accept as correct" the court's charges and apply them to the evidence. (*Id.*) "[J]uries are presumed to follow the court's instructions." *CSX Transp. v. Hensley*, 556 U.S. 838, 841 (2009) (per curiam). As nothing in the record rebuts that presumption, the jury presumably followed the trial court's instruction to listen to only its explanation of the law. Because doing that necessarily required the jury to ignore counsel's inaccurate prediction, it is unlikely that the statement affected the case. Thus, the undersigned recommends finding the PCR court reasonably denied Ground Eight.

## VII.    Ground Nine

After the fight, eyewitnesses Green and Patrick helped police search for Folkes and the knife. (Dkt. No. 14-1 at 246–47.) In that search, Green found a shirt in a trashcan at the park. (*Id.* at 247.) The police took it as evidence and had it analyzed. The law enforcement laboratory found no DNA or blood on it. (*Id.* at 295–97.) However, Jones and the eyewitnesses to the fight testified Folkes was wearing the shirt during the fight. (*Id.* at 102–03, 247–48.) The trial court admitted the shirt into evidence. (*Id.* at 104.)

In PCR, Folkes faulted lead trial counsel for not highlighting the lack of blood or DNA in his closing argument. (Dkt. No. 14-2 at 527.) At the PCR hearing, lead trial counsel testified he *did* point out the lack of blood in his closing. (Dkt. No. 14-1 at 405; Dkt. No. 14-2 at 626.) He acknowledged, however, that he did not mention the lack of DNA evidence. (Dkt. No. 14-2 at 626.) Although he did not recall he omitted that point, he testified it was inconsequential because witnesses who knew Folkes testified they saw him attack Jones; moreover, counsel felt the issue was minor and not worth emphasizing to the jury. (*Id.* at 626, 629–30.) He also testified that, to the extent Jones' attacker's identity could have been in question, it was sufficient to point out the shirt had no blood on it. (*Id.* at 626, 629.)

Relying on that testimony, the PCR court denied the claim. (Dkt. No. 14-2 at 838–39.) Agreeing with counsel's assessment of the DNA issue, the court found that mentioning lack of DNA would not have changed the trial's outcome. (*Id.* at 839.) The court therefore denied the claim for lack of prejudice. (*Id.*)

The PCR court's decision was legally and factually appropriate. Contrary to Folkes' assertion, counsel noted the shirt's lack of blood during his closing argument. (Dkt. No. 14-1 at 404–05.) Folkes cannot fault counsel for doing the very thing Folkes wanted him to do. As to the lack of DNA, the undersigned agrees with the PCR court's no-prejudice finding. Although

the witnesses to the attack testified Jones' assailant was wearing that shirt, they also testified that they knew Folkes well and that he was Jones' assailant. The presence or absence of Folkes' DNA on the shirt was thus unlikely to make a difference to the jury. The undersigned recommends denying this ground.

## VIII.   Ground Ten

During the charge conference, trial counsel conceded Folkes could not claim self-defense because he started the fight. (Dkt. No. 14-1 at 330.) Folkes asserted in PCR that he had a colorable self-defense claim, and trial counsel was ineffective for not pursuing it. (Dkt. No. 14-2 at 527.)

The PCR court disagreed. (*Id.* at 839–41.) The court began noting that, in South Carolina, one of the elements of self-defense is that the defendant "was without fault in bringing about the difficulty." (*Id.* at 840.) The court then found the trial record contained no evidence of this element; rather, all evidence relevant to that issue showed Folkes started the fight. (*Id.* at 841.) For that reason, the PCR court found counsel did not perform deficiently by passing on self-defense. (*Id.*) It also found Folkes failed to prove prejudice because he did not submit any evidence that, if produced at trial, would have supported a self-defense jury charge. (*Id.*) Without such evidence, the trial court would have denied a request for a self-defense instruction. (*Id.*)

### A.    Procedural Default

Folkes did not appeal the PCR court's ruling. Consequently, Ground Ten is defaulted and the Court should not address it.

### B.    Merits

As with Grounds One and Two, the PCR court's resolution of this claim turned on an application of state law: whether there was any evidence at trial that satisfied South Carolina

law's elements of self-defense. This Court could not grant Folkes relief on Ground Ten without first finding that state-law decision was wrong. As that is beyond this Court's province, *see Estelle*, 502 U.S. at 67–68, the PCR court's application of South Carolina law effectively prevents this Court from disturbing the PCR court's ultimate ruling on the claim. Thus, if the Court addresses this claim on the merits, it should deny the claim.

IX.    **Ground Eleven**

Robert McCracken was one of the police officers who responded to Jones' 911 call. (Dkt. No. 14-1 at 300.) He testified at trial that when he was dispatched to the scene, he "was told someone was cut severely." (*Id.*) Folkes asserted in PCR that trial counsel should have objected to McCracken's testimony because it was hearsay. (Dkt. No. 14-2 at 527.)

The PCR court denied the claim. (Dkt. No. 14-2 at 841–42.) Without addressing whether counsel performed deficiently, it found the omission did not prejudice Folkes. (*Id.* at 842.) The court pointed out that, on cross-examination of the State's medical expert, trial counsel got the expert to concede Jones' wounds were not severe. (*Id.*) Further, the PCR court noted, counsel highlighted that concession to the jury during closing argument. (*Id.*) Because counsel elicited testimony from an important witness dispelling any notion that Jones' wounds were severe, Folkes suffered no prejudice from McCracken telling the jury what a dispatcher said to him. (*Id.*)

The PCR court's decision was reasonable. The State's expert testified that when emergency room patients present with wounds, the severity of their trauma is assessed and given a rating; Jones received the least serious rating on the scale. (Dkt. No. 14-1 at 356–59.) The expert also acknowledged that the cut on Jones' neck did not penetrate any arteries or veins, or Jones' throat. (*Id.* at 363.) Trial counsel's cross-examination thus demonstrated that, despite one of the cuts being to Jones' neck, the wounds were not life-threatening. As the PCR court

recognized, a medical expert's explanation of how Jones' wounds were not serious almost certainly would have carried more weight with the jury than McCracken telling them what a dispatcher relayed to him in the heat of the moment. This ground should be denied.

## X.      Ground Twelve

When police arrested Folkes, they took a beer bottle and put it in their evidence room. (Dkt. No. 14-1 at 309.) Somehow, the bottle broke while in the police department's possession. (*Id.*) Nevertheless, it was admitted into evidence as purportedly the bottle Folkes threw at Jones. (*See id.* at 309–10.)

In PCR, Folkes faulted trial counsel for not objecting to the bottle's admission. (Dkt. No. 14-2 at 527.) He asserted it was improper to admit the bottle because it had been broken, preventing the jury from meaningfully examining it, and because the State could not prove what brand of beer had been in it. (*Id.*) The PCR court, however, rejected those arguments. (*Id.* at 842.) First, contrary to Folkes' assertion, trial counsel *did* object to the bottle's admission on the basis that it was broken; the trial court overruled the objection. (*Id.*) Second, although counsel did not make an argument about the inability to identify the brand of beer, the PCR court found there was "no conceivable likelihood that the type of beer had any impact on [Folkes'] case." (*Id.*) The PCR court therefore denied the claim. (*Id.*)

### A.      Procedural Default

Folkes did not appeal the PCR court's ruling on this ground. Consequently, Ground Twelve is defaulted and the Court should not address it.

### B.      Merits

The undersigned sees nothing problematic in the PCR court's ruling. As that court pointed out, trial counsel objected to the bottle being admitted, as it was no longer in the same condition as when the police seized it. (Dkt. No. 14-1 at 309–10.) The trial court overruled that

objection. (*Id.* at 310.) That trial counsel did what Folkes alleged they did not do undercuts that portion of Folkes' claim. As for the brand of beer, the undersigned agrees with the PCR court: that issue was immaterial. If the Court reaches the merits of the claim, it should deny the claim.

**XI.    Grounds Thirteen, Fourteen, and Fifteen**

One of the State's trial exhibits was Folkes' backpack, which police took from him during his arrest. (Dkt. No. 14-1 at 322–24.) According to Folkes, when was taken to jail, officers directed him to remove the clothes he was wearing. (Dkt. No. 14-2 at 526–27.) At some point after that, the clothes were put in the backpack, underneath a sleeping bag. (*Id.*)

In PCR, Folkes argued that trial counsel should have objected to the backpack being admitted with the clothes inside it, as that did not accurately illustrate the pack's contents when he had it. (Dkt. No. 14-2 at 527.) He also argued counsel should have called David Battiste, a police officer involved in Folkes' booking, to testify that he put the clothes in the backpack. (*Id.*) Finally, and similarly, Folkes argued counsel was ineffective for not establishing that the clothes in the bag were what he was wearing during the fight and that Folkes did not hide them in there under the sleeping bag. (*Id.*) Battiste testified at the PCR hearing, saying he only vaguely remembered Folkes' case. (*Id.* at 596–605.)

The PCR court denied all three claims. (Dkt. No. 14-2 at 843–85.) Without addressing counsel's performance, the court found Folkes failed to prove prejudice on any of the claims. (*Id.*) In addition to discussing evidence specific to each claim, the court found all three claims failed because the question of whether Folkes changed clothes after the attack was collateral. (*Id.*) The clothing, the PCR court explained, was relevant to the attacker's identity; because several people who knew Folkes testified they watched him attack Jones with a knife, identity was a non-issue. (*Id.*) Consequently, any inference the jury might have drawn about the

circumstances surrounding Folkes changing his clothes was not reasonably likely to have affected the case's outcome. (*Id.*)

### A.     Procedural Default

Folkes did not appeal the PCR court's rulings on any of these three claims. Consequently, they are defaulted and the Court should not address them.

### B.     Merits

The record demonstrates the PCR court reasonably denied the claims. As the PCR court pointed out, whether Folkes changed clothes between the attack and his arrest was irrelevant. As previously discussed, five people who knew Folkes, including his recent ex-girlfriend, testified they saw him wound Jones. In addition, Folkes did not present any direct evidence showing the police put the clothes in the bag. Although Battiste testified at the PCR hearing that he recalled instructing Folkes to remove some clothes, he did not remember what happened to those clothes. (Dkt. No. 14-2 at 598–600.) Folkes' failure to establish the main factual premise of his claims makes the PCR court's denial of them all the more appropiate. The undersigned thus recommends denying these grounds even if the Court reaches their merits.

### XII.    Ground Sixteen

The State also introduced another backpack into evidence. (Dkt. No. 14-1 at 244–45.) The State had it admitted after Green testified it was the bag Folkes had with him during the altercation. (*Id.* at 244.) Later in the trial, however, the State realized that backpack actually belonged to Jones. (*Id.* at 391.) In her closing argument, the prosecutor clarified to the jury that the backpack belonged to Jones, while the other backpack she had introduced belonged to Folkes. (*Id.*)

Despite that clarification, Folkes asserted in PCR that the clothes he was wearing when he was arrested were later placed into Jones' backpack. (Dkt. No. 14-2 at 526.) He claimed trial

counsel performed ineffectively by not proving that at trial. (*Id.*) The PCR court denied that claim. (*Id.* at 845–46.) After noting the claim was inconsistent with Grounds Thirteen, Fourteen, and Fifteen, the court found there was no evidence that Folkes' clothes were ever in Jones' backpack. (*Id.*) It then found that, as with those preceding three claims, counsel's alleged conduct could not have prejudiced Folkes; because there was overwhelming eyewitness evidence that Folkes cut Jones, what might have happened to his clothes after the fact was unlikely to impact the case. (*Id.*)

### A.    Procedural Default

Folkes did not appeal the PCR court's ruling on this ground. Consequently, Ground Sixteen is defaulted and the Court should not address it.

### B.    Merits

The undersigned sees no merit to this ground. As the PCR court noted, Folkes offered no evidence that his clothes were in that backpack, and he failed to explain how having the clothes there might have affected his trial. Even if the Court reaches the merits, the undersigned still recommends denying this ground.

## XIII.   Ground Seventeen

At trial, Jones described the knife Folkes used to slash him. (Dkt. No. 14-1 at 107–08.) The prosecutor then showed Jones a knife that she had marked for identification as a demonstrative exhibit and that she acknowledged was not the knife from the fight. (*Id.* at 108.) Jones testified the knife was "very, very similar" to the one Folkes used in the fight. (*Id.*) The knife was not admitted into evidence.

In PCR, Folkes alleged counsel was ineffective for not objecting to the prosecutor displaying the knife during Jones' direct examination. (Dkt. No. 14-2 at 792–93.) The PCR court denied the claim. (*Id.* at 846–47.) It reasoned that because Jones testified the knife so

closely resembled what Folkes used in the fight, any objection to its demonstrative use would have been overruled. (*Id.*)

The undersigned sees no basis for rejecting that ruling. In PCR, Folkes argued trial counsel should have objected to the display of the knife because it was irrelevant and calculated to inflame the jury's passions. (Dkt. No. 14-2 at 794.) Relevance and unfair prejudice are issues of South Carolina evidence law. *See* S.C. R. Evid. 401, 403. Folkes' argument, then, helps explain the PCR court's decision: by saying the objections would have been overruled, the PCR implied it found the demonstrative use of the knife permissible under state evidence law. That means this Court could not upend the PCR court's ruling without going behind that court's evidentiary determination. As discussed above, this Court may not do that. Because this Court must accept the PCR court's decision that the objections would have been futile, trial counsel's failure to object cannot be characterized as ineffective. *See Rice*, 2014 WL 8335449, at *9. The undersigned therefore recommends denying this claim.

### XIV.   Grounds Eighteen and Nineteen

In Folkes' view, the State depicted him to the jury as a homeless, unemployed drunk. (Dkt. No. 14-2 at 796.) But according to Folkes, he was employed during the week preceding the incident and had worked eight hours just before he went to the park that afternoon. (*Id.* at 528.) Folkes asserted in PCR that trial counsel should have introduced evidence of him working, as it would have rebutted the State's evidence that he showed up to the park drunk. (*Id.* at 528.) Similarly, Folkes claimed trial counsel was ineffective for not presenting evidence that he had been living in a motel before the incident. (*Id.*)

During the PCR hearing, lead trial counsel testified he investigated whether Folkes worked on the day of the fight and whether he had been living in a motel. (Dkt. No. 14-2 at 644–48, 668.) He further testified he made a tactical decision to not try to prove those facts; under a

state procedural rule in place at that time, he would get to go last in closing arguments if he did not present a defense case. (*Id.* at 646, 647.) Counsel felt it was better to go last at closing than to present facts that, in his view, were not important. (*Id.*)

The PCR court relied on that testimony to deny Folkes' claims. (Dkt. No. 14-2 at 847–49.) It found counsel made a "strategic and well-reasoned decision" to not pursue the issues at trial after investigating them. (*Id.* at 847–48.) Citing the proposition that counsel generally may not be found ineffective for making informed strategic decisions, the court ruled counsel performed professionally. (*Id.* at 848–49.) Additionally, it concluded Folkes' living arrangement and employment were collateral matters, and thus counsel's decision not to prove them did not prejudice him. (*Id.*)

The undersigned finds the PCR court's decisions reasonable. Before addressing any of Folkes' specific grounds, the court began its legal analysis by reciting ineffective-assistance principles. (*See* Dkt. No. 14-2 at 825–26.) In that recitation, the court noted it had to be deferential to counsel's decisions and presume counsel performed reasonably. (*Id.* at 825.) Immediately after that, it cited two state Supreme Court cases for the proposition that "when counsel articulates a valid reason for employing a certain strategy, such conduct will not be deemed ineffective assistance of counsel." (*Id.* (case citations omitted).) When the PCR court later denied Grounds Eighteen and Nineteen, it referred back to that "valid reason" language. (*Id.* at 847, 848). By doing that, the PCR court indicated it faithfully followed *Strickland* in assessing counsel's performance, determining not only that counsel made a strategic decision (that is, a decision made after an appropriate investigation) but also that counsel's choice was reasonable. *Cf. Boseman v. Bazzle*, 364 F. App'x 796, 806 (4th Cir. 2010) (holding district court erred in finding PCR court's use of the same "valid reason" proposition was an improper application of *Strickland*; PCR court's order sufficiently indicated the court followed

*Strickland*'s performance-prong standards).  Thus, the PCR court did not inappropriately apply *Strickland* in assessing trial counsel's performance.  And nothing in the record shows the PCR court's assessment of the facts relating to counsel's performance was unreasonable.  Because the record supports the PCR court's determinations that counsel performed adequately, the undersigned recommends denying these two grounds.

### XV.    Ground Twenty

In her closing argument, the prosecutor made the following statement:

> What did [Folkes] do when he left?  As he's going out he tries to conceal his shirt, possible evidence.  He doesn't know I guess what's on that shirt, but he knows he can be identified from it, throws it in a trashcan, takes off his shirt, changes his clothes.  Clothes which are kept in that backpack are kept in that area down there that he's walking up trying to leave the park.  Who knows where he got them, but he changed his clothes.

Dkt. No. 14-1 at 394.)  In PCR, Folkes asserted this statement included facts that were not in evidence, so trial counsel should have objected to it.  (Dkt. No. 14-2 at 528.)

The PCR court rejected Folkes' claim.  (Dkt. No. 14-2 at 849–50.)  Without addressing whether counsel performed deficiently, the court ruled counsel's alleged error was not prejudicial.  (*Id.*)  It again found that because Folkes' identity was not disputed, what clothes he wore during or after the attack was a collateral matter.  (*Id.*)  Moreover, the court found, the prosecutor's statements were based on trial testimony and inferences that could reasonably be drawn from it.  (*Id.* at 850.)  Thus, the PCR court concluded, counsel did not prejudice Folkes by failing to make a meritless objection.  (*Id.*)

The court's decision withstands § 2254(d).  A prosecutor may base her closing argument on "the record evidence and the reasonable inferences therefrom."  *State v. New*, 526 S.E.2d 237, 240 (S.C. Ct. App. 1999).  At trial, the State presented evidence that (1) the shirt Folkes wore during the fight was found in a trashcan (Dkt. No. 14-1 at 247); (2) Folkes had a backpack with

him during and after the fight (*Id.* at 244, 324); (3) homeless people kept their belongings in the park (*Id.* at 304); (4) Folkes had been homeless and spent time in that park (*Id.* at 131); and (5) Folkes was wearing clothes when he was arrested (*Id.* at 288, 758). That evidence supports the prosecutor's argument. Thus, as the PCR court found, counsel was not ineffective because the objection Folkes wanted would have been unfounded. *See Smith v. Padula*, 444 F. Supp. 2d 531, 539 (D.S.C. 2006) ("[T]rial counsel cannot be ineffective for failing to make a meritless[,] futile objection."). The undersigned recommends denying this ground.

## XVI.   Ground Twenty-One

In the direct appeal, appellate counsel focused on the trial court's refusal to give the ABHAN absence-of-malice charge trial counsel requested. (Dkt. No. 14-1 at 452.) She did not raise a separate claim challenging the jury charges on ABHAN that the trial court provided.   In PCR, Folkes argued appellate counsel should have done so. (Dkt. No. 14-2 at 528.) At the PCR hearing, appellate counsel admitted she did not make the charges given a separate issue; instead, she "pushed" that and the failure to give the requested instruction "all together in one issue." (Dkt. No. 14-1 at 579–80.)

The PCR court ruled Folkes did not prove either deficient performance or prejudice on this claim. (*Id.* at 850–52.) As to performance, the PCR court found appellate counsel acted appropriately by raising "three stronger, meritorious issues" for Folkes in the direct appeal. (*Id.* at 852.) As to prejudice, the court found there was no reasonable likelihood that, had appellate counsel separately challenged the ABHAN instructions in the appeal, she would have prevailed. (*Id.*) The PCR court therefore denied Folkes' claim. (*Id.*)

The PCR court conducted its analysis inside a legal framework that defers strongly to appellate counsel's issue selections. Appellate lawyers have no duty to raise every meritorious issue on appeal. *E.g.*, *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Their choice to not raise an

issue cannot be quickly second-guessed; rather, that choice is presumed to be effective. *See id.* at 754. In most cases, a prisoner can rebut that presumption "only when ignored issues are clearly stronger than those presented." *Smith v. Robbins*, 528 U.S. 259, 288 (2000).

The PCR court's weighing of the potential claims' various strengths is problematic.[3] The PCR court stated appellate counsel raised three issues in the direct appeal; actually, she raised just one, and it was closely related to the issue Folkes says she should have raised. (Dkt. No. 14-1 at 452.) Although the court's error may have been typographical, rather than analytical, the undersigned is nevertheless hesitant to resolve this claim on the performance prong of *Strickland*.

The PCR court's no-prejudice finding, however, is well-supported. In their respective briefs on direct appeal, both Folkes' appellate counsel and the State's attorney debated whether the trial court's ABHAN instructions accurately stated the law even though they did not include the language trial counsel requested. (*See* Dkt. No. 14-1 at 461–66, 476–80.) Thus, although appellate counsel did not raise the instructions' correctness as an independent ground for relief, both sides put the issue of the correct elements of ABHAN before the Court of Appeals.

Importantly, the Court of Appeals addressed it as well. The court affirmed through a one-paragraph memorandum decision:

> Clinton C. Folkes was convicted of [ABWIK] and was sentenced to life imprisonment without the possibility of parole. On appeal, Folkes argues the trial court erred in failing to charge the jury the absence of malice is not an element of [ABHAN]. We affirm pursuant to Rule 220(b)(1), SCACR, and the following authorities: *State v. Tyler*, 348 S.C. 526, 530–31, 560 S.E.2d 888, 890 (2002) ("[T]he absence of malice is not a required element of the offense of ABHAN."); *State v. Curry*, 370 S.C. 674, 682, 636 S.E.2d 649, 653 (Ct. App. 2006) ("A charge is sufficient if, when considered as a whole, it covers the law applicable to a case. The substance of the law is what must be charged to a jury, not any particular verbiage.") (internal quotation marks and citations omitted).

---

[3]    The Warden agues the PCR court's assessment is a state-law ruling that this Court may not review. Although the Warden cites Supreme Court cases saying federal habeas courts cannot disturb state court's rulings on state law, he does not cite any cases saying that a post-conviction court's assessment of appellate counsel's issue selection is a question of state law.

(Dkt. No. 14-1 at 485.)   Especially since the parties tied their arguments about the omitted charge to the sufficiency of the trial court's ABHAN instructions, the Court of Appeals' quotation of *Curry*—particularly the first quoted sentence—shows it reviewed the instructions and found them, as a whole, appropriate.   In other words, although appellate counsel did not make the instructions' correctness a separate issue, the Court of Appeals considered that question in the course of ruling on the closely related issue she did raise.   It was thus unlikely that appellate counsel's handling of the appeal prejudiced Folkes.

The absence of prejudice defeats an ineffective-assistance claim.   *See Strickland*, 466 U.S. at 697.   Thus, although the PCR court's analysis of this claim contained an error (even if, perhaps, just a typo), its ultimate disposition of the claim was not legally or factually unreasonable.   The undersigned therefore recommends denying this ground.

## XVII.  Ground Twenty-Two

Finally, during the PCR hearing, Folkes testified he did not accept the State's plea offers because he was worried doing so would have unintended consequences.   (Dkt. No. 14-2 at 729–30.)   He was concerned that even if the trial court accepted a negotiated ABWIK plea and sentenced him to the agreed-upon number of years in prison, the state Department of Corrections would nevertheless interpret the sentence as one of life without parole.   (*Id.*)

Based on that testimony, Folkes asserted one more claim after the PCR hearing.   (Dkt. No. 14-2 at 770.)   He alleged that when lead trial counsel presented the State's plea offers to him, counsel failed to explain that pleading guilty under an agreement with a negotiated sentence would not trigger a mandatory life without parole designation.   (*Id.*)

The PCR court never addressed this claim in its order.   Folkes did not file a motion asking the court to rule on the claim.   However, he raised the issue in his PCR certiorari petition. (Dkt. No. 14-4 at 44–47.)

### A.    Procedural Default

The PCR court never addressed this ground.  Instead of filing a motion asking the court to rule upon it, Folkes appealed.  Folkes' failure to ask the PCR court to rule on the issue meant it was not preserved for appellate review.  *See Marlar v. State*, 653 S.E.2d 266, 266 (S.C. 2007) (per curiam).

### B.    Merits

Because no state court ever adjudicated this claim on the merits, § 2254(d)'s standard of review would not govern merits review here; rather, the Court's review would be *de novo*.  *See Cone v. Bell*, 556 U.S. 449, 472 (2009).[4]  However, even under that more generous standard, the undersigned cannot see merit in Folkes' claim.  Lead trial counsel testified that when he and Folkes discussed the plea offers, Folkes understood that the offers, if accepted, "would alleviate the life without parole."  (Dkt. No. 14-2 at 652.)  There was "no ambiguity in [Folkes'] mind," counsel said—Folks "knew" that if he accepted the State's offers, he would be "getting ten or twenty years in prison, not life without parole."  (*Id.*)

Although the PCR court made no findings on this issue,[5] it is notable that, every time the court weighed counsel's and Folkes's credibility, it believed counsel over Folkes.  Those

---

[4]    The undersigned does not mean to suggest that, if the Court reaches the merits of Ground Twenty-Two, Folkes would be free to submit any evidence on the claim he wants.  Rather, even if a claim was never adjudicated on the merits in state court, § 2254 "still restricts the discretion of federal habeas courts to consider new evidence" for that claim.  *Cullen v. Pinholster*, 563 U.S. 170, 186 (2011).  To meet those criteria, Folkes would have to show his claim relies on either "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or "a factual predicate that could not have been previously discovered through the exercise of due diligence."  § 2254(e)(2)(A).  He would also need to show that the facts underlying his claim "would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."  § 2254(e)(2)(B).  Folkes has not offered any proof or argument satisfying either of § 2254(e)'s options.  Thus, if the Court were to reach the merits, it should analyze the claim using only the existing record.

[5]    In his summary judgment brief, the Warden states the PCR court found "lead trial counsel more credible than [Folkes].  (Attachment 1, 834)."  (Dkt. No. 14 at 31.)  The credibility finding the Warden cites related only to

credibility findings tend to support counsel's testimony here, as it is consistent with other things the PCR court found credible. For example, as mentioned in Ground Four, Folkes testified at the PCR hearing that trial counsel did not explain his options for testifying or presenting a defense. The PCR court discredited that testimony, instead believing lead trial counsel's testimony that he did explain those options. Similarly, as noted above, the record shows that trial counsel did several other things Folkes accused him of not doing. The undersigned is thus persuaded that, contrary to Folkes' accusation, a reasonable trier of fact could find only that trial counsel adequately informed Folkes he could avoid a no-parole sentence by accepting the State's plea offers. Consequently, if the Court were to reach the merits of this claim, the undersigned would nevertheless recommend denying it.

### XVIII. Certificate of Appealability

If the Warden's summary judgment motion is granted, the District Judge will need to decide whether to issue a certificate of appealability. *See* Rule 11(a), Rules Governing § 2254 Cases. A certificate may be issued only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a petitioner's constitutional claims have been denied on the merits, the petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller–El v. Cockrell*, 537 U.S. 322, 338 (2003) (citation and quotation marks omitted). Where a petitioner's constitutional claims are dismissed on procedural grounds, the petitioner must show both (1) that jurists of reason would find it debatable whether the petition states a valid claim of denial of a constitutional right, and (2) that jurists of reason would find it debatable whether the district

---

Ground Four. (*See* Dkt. No. 14-2 at 834 (stating lead trial counsel's "testimony *regarding this allegation* should be afforded great weight" (emphasis added)). If the Warden is asserting that credibility finding was intended to apply to Ground Twenty-Two, he is mistaken.

court was correct in its procedural ruling.  *Rose v. Lee*, 252 F.3d 676, 684 (4th Cir. 2001).  The undersigned does not see a basis for issuing a certificate in this case.

## CONCLUSION

For the above reasons, the undersigned recommends the Court grant the Warden's motion, dismiss this case with prejudice, and decline to issue a certificate of appealability.

**IT IS SO RECOMMENDED.**

November 15, 2019
Charleston, South Carolina

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

The parties' attention is directed to the **important notice** on the next page.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).