# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Clinton Folkes, # 216506, ) | Civil Action No. 2:19-0760-RMG |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **ORDER AND OPINION** |
| ) | |
| Warden Nelsen, ) | |
| ) | |
| Respondent. ) | |

Before the Court is the Petitioner's petition for a writ of habeas corpus on a single remaining ground, Ground 3, challenging the effectiveness of appellate counsel following the issuance of the adverse decision of the South Carolina Court of Appeals on September 24, 2010 until the issuance of the remittitur on October 18, 2010. The Magistrate Judge issued a Report and Recommendation ("R & R") recommending that Respondent's motion for summary judgment be granted. (Dkt. No. 38.) Petitioner filed objections to the R & R and the Respondent filed no reply. (Dkt. No. 39.) For reasons set forth below, the petition is granted.

**I.     Background**

Petitioner Clinton Folkes proceeded *pro se* to seek a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He is incarcerated on a term of life imprisonment without possibility of parole. In 2008, he was tried in the Richland County Court of General Sessions and found guilty by a jury of assault and battery with intent to kill. The conviction stemmed from a July 2007 physical fight during which Petitioner cut a man in the neck with a knife and was heard at the time, by witnesses who testified at trial, to have said, "I should have killed you[.]" (Dkt. No. 14-1 at 245, 247, 436.)

The Warden moved for summary judgment on Petitioner's § 2254 motion, to which Petitioner responded in opposition. The Court granted summary judgment as to Grounds One, Two, and Four through Twenty-Two, denied summary judgment without prejudice as to Ground Three, and appointed Petitioner counsel because there were substantial issues raised by Ground Three that were not adequately briefed by Respondent or Petitioner, who was at that time proceeding *pro se*. (Dkt. No. 28.) The Court, therefore, set a supplementary briefing schedule and directed the parties to address seven specific issues. (Dkt. No. 30.) The parties have submitted this supplemental briefing, and the Magistrate Judge now recommends that the Court grant summary judgment to dismiss the remaining Ground Three. Petitioner filed an objection to this recommendation. (Dkt. No. 39.)

## II.     Legal Standard

### A.     Review of R & R

The Magistrate Judge makes a recommendation to the Court that has no presumptive weight and the responsibility to make a final determination remains with the Court. *See, e.g.*, *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Where there are specific objections to the R & R, the Court "makes a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id*. In the absence of objections, the Court reviews the R & R to "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72 advisory committee's note; *see also Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983) ("In the absence of objection . . . we do not believe that it requires any explanation.").

### B.  Motion for Summary Judgment

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.,* 810 F.2d 1282, 1286 (4th Cir. 1987). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The movant has the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, to survive summary judgment the respondent must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

### C.  Federal Habeas Relief Pursuant to 28 U.S.C. § 2254

A state prisoner who challenges matters "adjudicated on the merits in State court" can obtain federal habeas relief only if he shows that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). When reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). The state court's application is unreasonable if it is "objectively unreasonable, not merely wrong." *White v. Woodall*, 572 U.S. 415, 419 (2014). Meaning, the state court's ruling must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

The state court's determination is presumed correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The state court's decision "must be granted a deference and latitude that are not in operation" when the case is considered on direct review. *Harrington*, 562 U.S. at 101. This is because habeas corpus in federal court exists only to "guard against extreme malfunctions in the state criminal justice systems." *Id.* at 102 (citation and internal quotation marks omitted). Accordingly, pursuant to 28 U.S.C. § 2254(d), a federal habeas court must (1) determine what arguments or theories supported or could have supported the state court's decision; and then (2) ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of the United States Supreme Court. *Harrington*, 562 U.S. at 102. "If this standard is difficult to meet, that is because it was meant to be." *Id*.

Before the petitioner may pursue federal habeas relief to this standard, he must first exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). The petitioner "must present his claims to the state's highest court," *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997) (abrogated on other grounds by *United States v. Barnette*, 644 F.3d 192 (4th Cir. 2011)), which requires the petitioner to have "fairly present[ed] to the state court both the operative facts and

the controlling legal principles associated with each claim." *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004) (internal quotation marks omitted).  A federal habeas court should not review the merits of claims that would be found to be procedurally defaulted or barred under independent and adequate state procedural rules. *Lawrence v. Banker*, 517 F.3d 700, 714 (4th Cir. 2008).  Rather, for a procedurally defaulted claim to be properly considered by the federal habeas court, the petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

**III.     The Critical Factual Issues and the Court's Seven Questions**

Ground Three of Petitioner's § 2254 petition alleges:

Appellate Counsel was ineffective for failing to file a Petition for Rehearing in the Court of Appeals thereby depriving the Applicant of his right to seek certiorari in the Supreme Court of South Carolina.

(Dkt. No. 1-1 at 7.)

A petitioner may demonstrate ineffective assistance of counsel by showing the attorney's work was both deficient and prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if it was unreasonable under the circumstances of the case and the then-prevailing professional norms. *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). To meet the *Strickland* standard, "an attorney's performance must be objectively unreasonable." *Bostick v. Stevenson*, 589 F.3d 160, 166 (4th Cir. 2009).  Prejudice requires a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  A "reasonable probability" means "a probability sufficient to undermine confidence in the outcome." *Kimmelman*, 477 U.S. at 384.  Where a defendant loses his appeal rights due to counsel failing to consult and inform him of his appellate

rights, prejudice may be shown by establishing that "but for [counsel's] failure, he would have timely appealed." *Bostick*, 589 F.3d at 168.

The *Strickland* test for ineffective assistance of counsel is highly deferential to the attorney, and the standard for § 2254 relief is itself highly deferential to the state court. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). As a result, when the state court adjudicated an ineffective assistance claim on its merits, the § 2254 district court's review is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). The district court's focus is "not whether counsel's actions were reasonable," but rather "whether there is any reasonable argument that [the petitioner's] counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

On his direct appeal, Petitioner was represented by M. Celia Robinson, a member of the South Carolina Commission on Indigent Defense, Division of Appellate Defense, who raised the following issue on direct appeal: "Did the trial judge err reversibly in refusing to issue the requested charge on the lesser included offense of Assault and Battery of a High and Aggravated Nature (ABHAN) indicating that the absence of malice is not a required element for an ABHAN conviction?" (Dkt. No. 14-1 at 455.) On September 24, 2010, the South Carolina Court of Appeals affirmed Petitioner's conviction in a *per curiam* opinion. (*Id*. at 489-90.) Ms. Robinson, although still counsel of record to Petitioner, had left the Commission on Indigent Defense on September 14, 2010 and was no longer providing any legal representation to Petitioner. In clear violation of South Carolina Appellate Court Rule 264, she had not provided Petitioner notice of her withdrawal, petitioned the South Carolina Court of Appeals to withdraw, obtained an order from the Court of Appeals to withdraw, or provided notice of her withdrawal to the opposing party.

Following the issuance of the adverse decision by the South Carolina Court of Appeals, no attorney advised Petitioner of the decision, nor informed him of his right to seek further review via a petition for rehearing before the South Carolina Court of Appeals or a petition for certiorari before the South Carolina Supreme Court.  Further, no attorney advised Petitioner that if he failed to timely seek further relief, his right to pursue a state court appeal would end.

Respondent contends that the Chief Appellate Defender, Robert Dudek, assumed responsibility for all of Ms. Robinson's pending cases upon her departure from the office. However, Mr. Dudek had no recollection of reviewing the adverse decision of the South Carolina Court of Appeals, nor of assessing whether a petition for further relief should be sought, nor is there any record evidence that he performed any legal services on Petitioner's behalf during the period from the issuance of the adverse decision on September 24, 2010 until the filing of the remittitur on October 18, 2010. (Dkt. No. 14-2 at 57-58, 71.)  What is undisputed is that neither Mr. Dudek nor any other attorney moved to be substituted as Petitioner's counsel upon Ms. Robinson's departure and that no attorney advised Petitioner of the adverse decision of the Court of Appeals or of his right to seek further appellate review.  Ms. Robinson testified at the state PCR hearing that had she still been representing Petitioner when the decision was entered, she would have petitioned for rehearing and certiorari. (*Id*. at 81.)  Mr. Dudek testified at the same hearing that he disagreed with the South Carolina Court of Appeals decision. (*Id.* at 60-61.)

In his PCR action, Petitioner raised whether "Appellate Counsel was ineffective for failing to file a Petition for Rehearing in the Court of Appeals, thereby depriving the Applicant of his right to seek certiorari in the Supreme Court of South Carolina." (Dkt. No. 14-2 at 335.) This ground asserts a claim for ineffective assistance of appellate counsel from the time of the adverse decision of the South Carolina Court of Appeals on September 24, 2010 until the

issuance of the remittitur on October 18, 2010. The PCR court denied the claim, reasoning that because criminal appellate counsel has no duty to pursue rehearing or certiorari and a petitioner has no constitutional right to effective assistance of counsel when seeking discretionary appellate review, Petitioner could not demonstrate deficiency and prejudice. (Dkt. No. 14-2 at 338.) The PCR court did not address the issue of whether appellate counsel's performance was ineffective in the immediate post-decision period when the appeal remained before the Court of Appeals and Petitioner was given no notice of the adverse decision or of his right to seek further appellate review.

On September 28, 2010—four days after the South Carolina Court of Appeals adverse decision—Petitioner was sent a letter on the letterhead of the South Carolina Commission on Indigent Defense, purportedly signed by Ms. Robinson, stating that the South Carolina Court of Appeals had denied his petition for certiorari and granted a petition for counsel to be relieved. The letter further stated that Petitioner had now exhausted his state court remedies. There is no dispute that Ms. Robinson's signature was a forgery and that the letter was sent by a paralegal without any supervision or knowledge of a licensed attorney. (Dkt. No. 14-2 at 80-81.) Further, there is no dispute that this letter contained multiple false statements, including that (1) a petition for certiorari had been submitted, (2) an order had been issued denying certiorari review, (3) an order had been issued relieving Ms. Robinson as counsel, and (4) Petitioner's right to seek further state court review had been exhausted.[1]

---

[1] The September 28, 2010 letter on the letterhead of the South Carolina Commission on Indigent Defense and purportedly hand signed by Ms. Robinson, states, *inter alia*: "Enclosed is a copy of the Order of the Court of Appeal's [sic] denying our Petition for Writ of Certiorari, and granting the petition to be relieved. This means that you have now exhausted your state court remedies." Petitioner was then advised of the one year statute of limitations regarding any petition for habeas corpus in federal court. (Dkt. 14-2 at 253).

Now, to determine whether Ground Three of this § 2254 should be dismissed on summary judgment, the Court directed the parties to address seven specific questions (Dkt. No. 30), to which Respondent and Petitioner answered (Dkt. Nos. 31, 32, 34).[2] The Court reviews the answers, and provides its own assessment of them, in turn:

A. Did an attorney acting on behalf of Petitioner review the decision of the South Carolina Court of Appeals of September 24, 2010 and make a determination whether a petition for rehearing should be filed? If the answer is in the affirmative, identify that attorney.

> *Petitioner:*   No.
>
> *Respondent*:   Respondent's answer is unclear, instead offering that (1) Dudek "reviewed the judicial opinions on [Robinson's] cases as they were received" and (2) "[d]espite conflicting evidence, it appears that Dudek made the decision not to seek certiorari in petitioner's case."
>
> *Analysis:*   There is no record evidence that any attorney reviewed the adverse decision of the South Carolina Court of Appeals or made any determination whether a petition for rehearing should be filed. Respondent's claim that Mr. Dudek *may* have conducted such a review is inconsistent with his testimony that he had no recollection of conducting such a determination and regretted that no petition for rehearing had been filed. (Dkt. No. 14-2 at 58.)

B. Did an attorney acting on behalf of Petitioner consult with him regarding whether a petition for rehearing should be filed following the decision of the South Carolina Court of Appeals on September 24, 2010? If the answer is in the affirmative, identify that attorney.

> *Petitioner*:   No.
>
> *Respondent*:   No. ("[I]t appears no attorney personally consulted with petitioner after the Court of Appeals issued its opinion.")
>
> *Analysis*:   There is no dispute of material fact: no attorney acting on behalf of Petitioner consulted with him regarding petitioning for rehearing.

---

[2] Petitioner answered each question squarely and directly in a clear format, by listing each question and stating yes or no with supporting reasoning. Respondent, by contrast, twice provided a block narrative answer containing argument that does not squarely answer each question asked.

C.      Were the decisions whether to file a request for rehearing and a petition for certiorari following the decision of the South Carolina Court of Appeals of September 24, 2010 critical stages of the criminal proceedings?

         *Petitioner:*     Yes [both decisions are critical]. A critical stage is "any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." *United States v. Wade*, 388 U.S. 218 (1967). Here, a determinative opinion was issued that could have been reheard or petitioned, which means it was a critical stage of the proceedings. But Robinson had already absented herself at that time, thereby causing prejudice.

         *Respondent*:     No. If an individual does not have a constitutional right to counsel at a certain stage of the proceedings, then he cannot claim ineffective assistance of counsel during that stage, and therefore the stage is not critical.

         *Analysis*:     There is a dispute regarding whether the period following the adverse decision of the Court of Appeals on September 24, 2010 until the issuance of the remittitur on October 18, 2010, while Petitioner's appeal was still pending before the Court of Appeals on direct appeal, constituted a critical stage of the direct appeal proceedings.

D.      If no attorney acting on behalf of the Petitioner (i) reviewed the decision of the South Caroline Court of Appeals, (ii) made the decision whether a request for rehearing should be made, or (iii) consulted with Petitioner regarding his right to seek rehearing due to an attorney assignment error within the offices of his court appointed appellate-counsel, would such failures, individually or collectively, constitute the actual or constructive denial of appellate counsel and/or constitute ineffective assistance of counsel?

         *Petitioner:*     Yes. Prejudice is presumed when the defendant is completely denied counsel "at a critical stage of his trial." *United States v. Cronic*, 466 U.S. 648, 659 (1984). Petitioner had no legal representation when the opinion was issued and could have been reheard or petitioned, because Robinson had left her job and Dudek, even if he were considered Petitioner's counsel, did not inform him of Robinson's resignation or review the opinion. "Based on Fourth Circuit precedent, the failure of an attorney to inform his client of the right to file a petition for writ of certiorari and to file a petition if requested by his client constitutes ineffective assistance of counsel under both prongs of *Strickland*." *Moton v. United States*, 2016 WL 1732736, at *3 (E.D. Va. Apr. 28, 2016) (citing *United States v. King*, 11 Fed.Appx. 219, 221 (4th Cir. 2001)).

         *Respondent:*     Respondent's answer is unclear, instead noting that "the decision to seek additional review is a matter of professional judgment" and "in deciding whether to seek further review, the attorney must assess if there is a reasonable chance of certiorari being granted."

> *Analysis:* The parties dispute whether these failures by counsel, individually or collectively, constitute actual or constructive denial of appellate counsel and/or constitute ineffective assistance of counsel.

E. If the Court were to determine that Petitioner was actually or constructively denied counsel at a critical stage of the criminal proceeding, would prejudice be presumed without the necessity of Petitioner showing actual prejudice or a likelihood of prevailing on appeal?

> *Petitioner*: Yes, prejudice would be presumed under *United States v. Cronic* and related caselaw. But Petitioner could also show actual prejudice or a likelihood of prevailing on appeal because, (1) to the extent he had any representation at the time, failure to inform him of his right to file a petition or writ of certiorari constitutes ineffective assistance under *King* and related caselaw; and (2) in light of record evidence that Robinson would have sought rehearing and a rehearing cannot otherwise be sought *pro se*.

> *Respondent:* No, prejudice would not be presumed because "appellate counsel subjected the State's case to meaningful and adversarial testing" but it was affirmed. And, Petitioner cannot demonstrate actual prejudice or a likelihood of prevailing on appeal because "it is entirely speculative to conclude [the Court of Appeals] opinion would have been reversed" because the Court of Appeals affirmed.

> *Analysis:* There is a dispute regarding whether prejudice can be presumed if Petitioner was actually or constructively denied counsel at a critical state of the proceeding. There is also a dispute whether Petitioner could otherwise show actual prejudice or a likelihood of prevailing on the merits.

F. The letter sent to Petitioner of September 28, 2010 (Dkt. No. 14-2 at 253) states that Petitioner's Writ of Certiorari had been denied, the court had granted his attorney her petition to be relieved, and Petitioner had exhausted his state court remedies. Does that communication meet professional standards of competence and reasonableness? Was that communication sent by an attorney acting on behalf of the Petitioner?

> *Petitioner*: No, the letter does not meet professional standards of competence and reasonableness. No, the letter was not sent by an attorney acting on behalf of Petitioner; it was prepared by a paralegal and signed in Robinson's name despite the fact that Robinson had already resigned.

> *Respondent*: No, the letter "likely does not meet professional standards." No, it was not sent by an attorney acting on Petitioner's behalf. Instead, it was drafted by a paralegal, using the wrong form, advising that the Court of Appeals had denied a writ of certiorari to review a denial of post-conviction relief, and signed on Robinson's behalf by the paralegal.

-11-

> *Analysis:*     There is no dispute of material fact that the letter does not meet professional standards and was not sent by a lawyer acting on Petitioner's behalf.

G.  If the Court were to determine that Petitioner was denied his right to counsel at a critical stage of the criminal proceeding and that he has *per se* suffered prejudice as a result, what would be the appropriate remedy? Would reinstating Petitioner's right to seek rehearing to the South Carolina Court of Appeals and, if necessary, to petition for certiorari, provide him his appropriate constitutional remedy?

> *Petitioner:*     "Reinstating Folkes' right to seek rehearing is an appropriate remedy. The Court of Appeals issued its remittitur in Folkes' direct appeal on October 18, 2020. (ECF Entry 14-1 p. 491). Accordingly, at this time the Court of Appeals only has the jurisdiction to entertain a motion to recall remittitur. *See Wise v. SCDOC*, 642 S.E.2d 551 (S.C. 2007). Using the relief awarded in *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009) and *Galloway v. Stephenson*, 510 F. Supp. 840, 845 (M.D.N.C. 1981) as a guide, a possible order granting a writ of habeas corpus would order Folkes' judgment and conviction be vacated and he be released from custody, unless within 60 days of the District Court's order the Court of Appeals (1) recalls its remittitur in *State v. Folks*, 2008-096806, and (2) entertains Folks' petition for rehearing. This relief is also consistent with Fourth Circuit decisions finding in adequacy of appellate counsel after an opinion was issued. *See King, Moton*."

> *Respondent:*     "The Court of Appeals likely does not have jurisdiction to consider any matter relating to this case, even a motion to recall the remittitur. *See Wise v. SCDC*, 642 S.E.2d 551 (S.C. 2007). . . . Because the Court of Appeals did not issue its remittitur by mistake, it could foreseeably decline to recall the remittitur based on a lack of jurisdiction. But there are other avenues of appellate relief available." (Dkt. No. 33 at 6). Respondent referenced South Carolina Appellate Court Rule 245(a) and the Fourth Circuit's decision in *Bostick v. Stevenson*, 589 F.3d 160, 168 (4th Cir. 2009) where a habeas petition was granted because defense counsel failed to consult with his client regarding his right to appeal. The South Carolina Supreme Court subsequently granted the appeal and overturned the defendant's murder conviction in *State v. Bostick*, 708 S.E .2d 774 (S.C. 2011). (*Id.* at 6-7).

> *Analysis:*     The parties dispute whether the Court of Appeals would have jurisdiction, but do not dispute that an avenue of South Carolina court appellate relief is available.

IV.     **Discussion**

    A.     **Was appellate counsel's performance following the issuance of the decision of the South Carolina Court of Appeals on September 24, 2010 and before the Court of Appeals entered the remittitur on October 18, 2010 "objectively unreasonable?"**

The Court must first address whether Petitioner had any functioning counsel during the period from the Court of Appeals' adverse decision issued on September 24, 2010 to the remittitur issued on October 18, 2010. The record is clear that Ms. Robinson had left her position with the Commission on Indigent Defense on September 14, 2010 without seeking and obtaining permission to withdraw as Petitioner's counsel, as required by South Carolina Appellate Court Rule 264. The record is also clear that no substitute counsel had appeared on Petitioner's behalf and there is no record evidence that any licensed attorney assumed the duties of substitute counsel, including the most basic duties of appellate counsel of informing the Petitioner of the adverse decision, of his right to seek further appellate review, and of the consequences of failing to do so. Indeed, the record evidence supports finding that after Ms. Robinson left the Commission on Indigent Defense on September 14, 2010 until the remittitur was issued on October 18, 2010, that Petitioner's legal representation was left in the hands of a non-attorney staff member.

The duty of appellate counsel to advise the client of an adverse decision and his right to seek further appellate review are mandatory under these circumstances and the failure to do so constitutes ineffective assistance of counsel. *See Bostick*, 589 F.3d at 168; *Proffitt v. United States*, 549 F. 2d 910, 912 (4th Cir. 1976); *United States v. Tajeda-Ramirez*, 380 Fed.Appx. 252, 2010 WL 2182187, at *1-2 (4th Cir. 2010); *United States v. King*, 11 Fed.Appx. 219, 2010 WL 568022, at *1 (4th Cir. 2001). The failure of Petitioner's appellate counsel to perform these most basic duties of appellate representation strongly support a finding that Petitioner's counsel had

for all practical purposes abandoned him at a critical time in the appellate process before the South Carolina Court of Appeals.

An analogous factual situation arose in *Maples v. Thomas*, 565 U.S. 266 (2012), where two post-conviction counsel for a death row inmate left their law firm without informing their client or the court of their departure. An adverse state court order was subsequently issued and the time for appeal expired without any filing of a notice of appeal. The issue before the U.S. Supreme Court in *Maples* was whether, under these circumstances, the defendant could show cause for procedural default. Justice Ginsburg, writing for the Court's majority, described the post-conviction attorneys' actions as "abandonment," leaving the defendant "unrepresented at a critical time for his state postconviction petition."[3] *Id*. at 271. The Court concluded that "no just system would lay the default at Maples' death-cell door." *Id*.

Moreover, even if this Court were to assume that Petitioner had not been abandoned by counsel, the performance (or lack thereof) of appellate counsel following the issuance of the adverse Court of Appeals decision on September 24, 2010 and before the issuance of the remittitur on October 18, 2010 was objectively unreasonable. The failure to advise Defendant of the adverse decision and of his right to seek further review under these circumstances falls far short of competent representation.

Additionally, the Court can not let pass without further comment regarding the gravity of the extraordinarily unprofessional and illegal conduct associated with the letter to Petitioner of

---

[3] The Court emphasized, "Maples maintains that there is [cause to excuse the default], for the lawyers he believed to be vigilantly representing him had abandoned the case without leave of court, without informing Maples they could no longer represent him, and without securing any recorded substitution of counsel. We agree. Abandoned by counsel, Maples was left unrepresented at a critical time for his state postconviction petition, and he lacked a clue of any need to protect himself *pro se*. In these circumstances, no just system would lay the default at Maples's death-cell door."

September 28, 2010 on the letterhead of the Commission on Indigent Defense. The letter contained a forged signature of counsel, was prepared and delivered by a non-attorney staff member of the Commission engaged in the unauthorized practice of law, and inaccurately informed Petitioner that his still active state court appellate rights had expired. The letter also falsely represented that the Court of Appeals had issued an order denying a petition of certiorari and an order relieving counsel of further representation. The September 28, 2010 letter provides an additional and independent basis for a finding that Petitioner was denied effective assistance of counsel.[4]

> **B.  Did Petitioner suffer prejudice as a result of the ineffective assistance of assistance of counsel following the adverse decision of the South Carolina Court of Appeals on September 24, 2010 and the issuance of the remittitur on October 18, 2010?**

Where a defendant was denied effective assistance of counsel by being informed of neither an adverse appellate court decision nor his right to seek further appellate review, he may demonstrate prejudice by showing that "but for [counsel's] failure, he would have timely appealed." *Bostick*, 589 F.3d at 168. All the record evidence supports the conclusion that had Petitioner received timely notice of the adverse decision of the Court of Appeals and of his right to seek further appellate review, he would have pursed an appeal. First, Ms. Robinson testified that had she still been Petitioner's counsel she would have filed a petition for rehearing and for certiorari, and Mr. Dudek testified he wished a rehearing and certiorari had been pursued.

---

[4] Respondent dismisses the September 28, 2010 letter as simply an oversight by a paralegal who used the wrong form letter. (Dkt. No. 31 at 3.) The Court finds this a far too benign interpretation of a seriously unprofessional act of professional conduct undertaken under the letterhead of the Commission on Indigent Defense. Ms. Robinson testified at the PCR hearing that the letter was prepared and signed by a paralegal without her knowledge or consent. (Dkt. No. 14-2 at 81.) Nonetheless, Ms. Robinson's forged signature was placed on correspondence to Petitioner. Mr. Dudek acknowledged that no attorney had assumed responsibility for Petitioner's case at the time the letter was sent and he had no recollection of seeing the letter. (*Id.* at 58.)

Second, Petitioner has diligently pursued his habeas petition, initially *pro se*, attempting to raise, among other things, a number of issues he had raised unsuccessfully in his direct appeal. Third, having been sentenced to life without a possibility of parole, it seems implausible that Petitioner would have not wished to pursue every appellate avenue. Petitioner has clearly established prejudice under these facts.

> C. **Was Petitioner denied counsel at the stage of his appellate proceedings in which he had a constitutional right to counsel?**

The PCR court and Respondent have attempted to posit this case as only raising the question of whether Petitioner had a constitutional right to have his counsel file a petition for rehearing to the South Carolina Court of Appeals and for certiorari to the South Carolina Supreme Court. If this were the sole issue before the Court, the PCR court and Respondent would be correct. *See Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982) (no right to counsel for discretionary appellate review). What the PCR court did not address, and Respondent seeks to avoid, are the duties of appellate counsel during the period post an adverse decision while the appeal is still pending on direct appeal before the appellate court. During this critical period in state court appellate practice—in this case from the issuance of the adverse decision on September 24, 2010 until the filing of the remittitur on October 18, 2010—appellate counsel had the duty to advise the client of the adverse decision and of his right to seek further appellate review. If appointed counsel was unable or unwilling to pursue further appellate review on Petitioner's behalf, Petitioner retained the right to pursue his appeal *pro se*, just as he initially did in the filing of his habeas petition.

The Court recognizes that there has been considerable debate among federal courts regarding what actions of appellate counsel fall within the proceedings of direct state court review, where the defendant enjoys the right to competent appointed counsel. These cases often

-16-

turn on the specific facts of each case. The Court finds persuasive the Sixth Circuit's well-reasoned decision in *Smith v. State of Ohio Department of Rehabilitation and Corrections*, holding that appellate counsel's failure to inform the defendant of the adverse decision on his direct appeal was an integral part of counsel's representation at the direct appeal stage. 463 F.3d 426, 432-33 (6th Cir. 2006) ("The court's ultimate decision regarding a particular legal proceeding is *part of that legal proceeding*, and appointed counsel's duties in representing a client during that legal proceeding include the duty of informing her client of the outcome of the proceeding.") (emphasis in original).[5] *See also Roe v. Flores-Ortega*, 528 U.S. 470, 479 (2000) (noting that Constitution requires "that counsel make objectively reasonable choices" and must do so not only during the legal proceeding for which counsel represents the client, but also after the judicial proceeding has concluded in determining whether an appeal should be filed); *Strickland*, 466 U.S. at 688 ("From counsel's function as assistant to the defendant derive the overarching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution."); *Jones v. Barnes*, 463 U.S. 745, 751 (1983) (because defendant's decision regarding whether to "take an appeal" is a "fundamental decision" that "the accused has the ultimate authority to make," it follows that counsel has duty to timely inform accused of proceeding's resolution); *Paris v. Turner*, 187 F.3d 637 (Table), 1999 WL 357815, at *2-3 (6th Cir. 1999), *cert. denied*, 529 U.S. 1104 (2000) (where counsel delays informing defendant of decision on first appeal of right and "fails to communicate to his client

---

[5] The facts of *Smith* bear important resemblance to those here. As that court emphasized: "The only way that Smith could have learned of the unpublished decision of the Ohio Court of Appeals affirming his conviction was if his counsel notified him. When she failed to do so, Smith was without any means of notice of the decision and thus did not and could not know that the forty-five day deadline for filing a notice of appeal to the Ohio Supreme Court had started to run." *Id*. at 434.

how to proceed with further appeals," it cannot "fairly be said that [defendant] truly had his first appeal of right").

The Court finds that the failure of appellate counsel to timely advise Petitioner of the adverse decision of the Court of Appeals on his direct appeal and of his right to seek further appellate review was integral to their duties in representing Petitioner at the direct appeal stage. Consequently, the failure of appellate counsel to perform in an objectively reasonable way at the state court direct appeal stage entitles Petitioner to habeas relief. Moreover, the delivery of the September 28, 2010 letter to Petitioner on the letterhead of the Commission on Indigent Defense with the forged signature of departed counsel, Ms. Robinson, inaccurately informing Petitioner that his state court appellate rights had been exhausted, was also integral to appellate counsel's representation at the direct appeal stage and provides an additional and independent basis for habeas relief.

**V.      Remedy**

Having found that Petitioner was denied effective assistance of counsel at a critical time in his direct state court appeal proceedings and suffered prejudice as a result, the Court must now fashion an appropriate remedy. It is worthwhile to note that Petitioner's requested remedy is rather modest: the reinstatement of his right to seek discretionary state court appellate review of the adverse decision of the Court of Appeals in his direct appeal.

Respondent suggests as a model for a remedy the Fourth Circuit's decision in *Bostick v. Stevenson*, which involved defense counsel's failure to consult with his client regarding his right to pursue a direct appeal. (Dkt. No. 33 at 6-7.) In *Bostick*, the Fourth Circuit instructed the district court on remand to "issue a writ of habeas corpus and that it order Bostick released from prison unless the state grants him a direct appeal within a reasonable time." 589 F.3d at 168. The

district court thereafter issued an order on January 25, 2010 granting the petition for habeas corpus and directed that "the State of South Carolina shall grant Mr. Bostick direct appeal no later than May 1, 2010 or he shall be released from prison pursuant to the Fourth Circuit mandate." *Bostic v. Warden of Broad River Correctional Institute*, C.A. No. 8:07-727, 2010 WL 360514 (D.S.C. 2010). The South Carolina Supreme Court subsequently allowed Bostick to file a belated appeal and reversed his murder conviction. *State v. Bostick*, 708 S.E. 2d 774 (S.C. 2011).

Petitioner urges the Court to grant a slightly different remedy, by directing the South Carolina Court of Appeals to recall its remittitur and to entertain a petition for rehearing. (Dkt. No. 32 at 7-8.) Respondent argues that this proposed remedy would be technically defective because the South Carolina Court of Appeals has no authority under these facts to recall its remittitur. Respondent suggests that the better course is for this Court to follow the *Bostick* model, ordering the State of South Carolina to reinstate Petitioner's appeal rights or release him from prison. (Dkt. No. 33 at 6.)

After carefully considering the appropriate remedy under these highly unusual facts, the Court hereby **GRANTS** Petitioner's habeas petition as to Ground 3 (Dkt. No. 1-1) and **ORDERS** that Petitioner be released from prison on or before May 1, 2021 unless the State of South Carolina before then reinstates his right to discretionary appellate review of the September 24, 2010 decision of the South Carolina Court of Appeals denying his direct appeal.[6]

---

[6] The Court's remedy is fashioned to restore Petitioner's right to seek discretionary review of the South Carolina Court of Appeals adverse decision of September 24, 2010. The Court will leave to the South Carolina Supreme Court whether it will simply allow Petitioner to petition for certiorari review before it or remand the matter to the South Carolina Court of Appeals with instructions that the remittitur be recalled and discretionary review of a petition for rehearing be granted. Should the Court of Appeals recall its remittitur and then deny a petition for rehearing,

-20-

**AND IT IS SO ORDERED.**

<u>s/ Richard Mark Gergel</u>
Richard Mark Gergel
United States District Judge

January 7, 2021
Charleston, South Carolina

---

Petitioner shall be entitled to seek certiorari review, before the South Carolina Supreme Court, of the adverse decision of the Court of Appeals on his direct appeal.